# IN THE COURT OF APPEALS OF IOWA

No. 21-1809
Filed February 16, 2022

**IN THE INTEREST OF K.P.,**
**Minor Child,**

**T.P., Father,**
        Appellant,

**L.P., Mother,**
        Appellant.

_____

Appeal from the Iowa District Court for Mahaska County, Rose Anne Mefford, District Associate Judge.

The father and the mother separately appeal the termination of their parental rights to their daughter. **FATHER'S APPEAL DISMISSED; AFFIRMED ON MOTHER'S APPEAL.**

Michael S. Fisher of Fisher Law Office, Oskaloosa, for appellant father.

Lynnette M. Lindgren of Faulkner, Broerman & Lindgren, Oskaloosa, for appellant mother.

Thomas J. Miller, Attorney General, and Diane Murphy Smith, Assistant Attorney General, for appellee State.

Denise McKelvie Gonyea of McKelvie Law Offices, Grinnell, attorney and guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., Ahlers, J. and Vogel, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2022).

**VOGEL, Senior Judge.**

The father and the mother of K.P., born January 2018, separately appeal the termination of their parental rights. We dismiss the father's appeal and affirm on the mother's appeal.

### I. The Father's Delayed Appeal

We begin by discussing the father's delayed appeal. The juvenile court filed the order of termination on November 11, 2021. The father filed his notice of appeal on December 3, four days after the November 29 deadline to file a notice of appeal.[1] Thus, the father's appeal was untimely. We may grant a delayed appeal only if three factors are proven: (1) "the parent clearly intended to appeal," (2) "the failure to timely perfect the appeal was outside of the parent's control," and (3) "the resulting delay is no more than negligible." *In re A.B.*, 957 N.W.2d 280, 292 (Iowa 2021); *see also In re W.T.*, 967 N.W. 2d 315, 322 (Iowa 2021) (affirming the three requirements for a delayed appeal). As the father's untimely petition is dismissed if a delayed appeal is not granted, he bears the burden to prove the grounds for a delayed appeal. *See* Iowa R. App. P. 6.904(3)(e) ("Ordinarily, the burden of proof on an issue is upon the party who would suffer loss if the issue were not established."); *accord Ford v. State*, 138 N.W.2d 116, 143 (Iowa 1965) (in dismissing a petition for habeas corpus as untimely, finding the incarcerated

---

[1] Under our rules of appellate procedure, an appellant has fifteen days from the final order or judgment to file a notice of appeal in a termination-of-parental-rights proceeding. *See* Iowa R. App. P. 6.101(1)(a). The father's fifteen days to appeal ran on November 26, but since it was a state holiday, the following Monday—November 29—was the filing deadline. *See* Iowa Code § 4.1(34) (2021) (stating when a filing deadline falls on a state holiday or the weekend, the deadline is extended until the next day the clerk's office is open to receive the filing).

person "has the burden to produce evidence clearly showing that he was prevented from proceeding according to law").

On December 10, the father's attorney filed a statement containing the following, attempting to explain the delay. The attorney stated the father is currently a prisoner of the State and incarcerated in Mount Pleasant. On November 12, the attorney forwarded the termination order and a notice of appeal to the father, directing him "to sign and return the Notice to my office no later than November 26, 2021." The attorney received no communication from the father until December 3, when the attorney received the father's signed notice of appeal. He immediately filed the notice that same day. The envelope containing the father's signed notice was postmarked in the Quad Cities on November 29. In asking this court to accept the father's delayed appeal, the attorney outlined several possible reasons for the delay: (1) it is "conceivable" that the father actually mailed the notice well before the filing deadline; (2) the father "unequivocally expressed his desire to appeal" by executing and returning the notice to the attorney; (3) the prison system may have "hurdles" that delay prisoners from receiving and sending mail; and (4) an intervening long holiday weekend.

Regarding the first factor we consider to grant a delayed appeal, the father clearly expressed an intent to appeal by mailing his signed notice to his attorney with a postmark by the November 29 deadline. *See W.T.*, 967 N.W.2d at 319 (stating the parent must intend "to appeal on time"). Regarding the second factor requiring the delay be outside the parent's control, the father's attorney told the father to return the signed notice to his office by November 26. By the grace of the long Thanksgiving holiday weekend, the attorney's stated deadline was three days

before the actual filing deadline. Yet the father's notice was not postmarked to his attorney until November 29—the filing deadline—and did not arrive at the attorney's office until four days later. We have no information from the father—either directly or communicated through his attorney—to show when he mailed the notice or explain why he did not mail it or otherwise contact his attorney sooner. The father's attorney provided possible explanations for why the late filing could be outside the father's control. But without an explanation from the father, we only have his attorney's clearly well-intended attempt to explain "conceivable" reasons for the delay. Nothing in the three-part test of a delayed appeal requires us to lay blame for the delay at the feet of the parent's attorney, but only that the delay was somehow "outside of the parent's control." *See A.B.*, 957 N.W.2d at 292. With no facts beyond the mere speculation of the father's attorney, the father has not met his burden to show the late filing was indeed outside his control. *See id.* While we do not reach the third factor, that the delay was negligible, we are skeptical that a four-day delay would be considered no more than negligible. *See A.B.*, 957 N.W.2d at 293 (finding a two-day delay was no more than negligible); *In re C.B.*, No. 21-0814, 2021 WL 4303660, at *3 (Iowa Ct. App. Sept. 22, 2021) (finding a three-day delay was no more than negligible); *In re B.W.*, No. 21-1810, 2022 WL _____, at *_ (Iowa Ct. App. Feb. 16, 2022) ("Given the expedited nature of child-welfare appeals, three days may be pushing the limit of what can be considered negligible."). Because the father failed to show at least one factor, the late filing of his notice of appeal was beyond his control, the father's appeal is dismissed as untimely.

## II.  Standard of Review.

We review termination-of-parental-rights proceedings de novo.  *In re M.W.*,
876 N.W.2d 212, 219 (Iowa 2016).  We are not bound by the factual findings of the
juvenile court, though we give them respectful consideration, particularly regarding
credibility determinations.  *Id.*

> Our review of termination of parental rights under Iowa Code
> chapter 232 is a three-step analysis.  The first step is to determine
> whether any ground for termination under section 232.116(1) has
> been established.  If we find that a ground for termination has been
> established, then we determine whether the best-interest framework
> as laid out in section 232.116(2) supports the termination of parental
> rights.  Finally, if we do find that the statutory best-interest framework
> supports the termination of parental rights, we consider whether any
> exceptions in section 232.116(3) apply to preclude termination of
> parental rights.

*Id.* at 219–20 (citations omitted).

## III.  The Mother's Appeal.

### A. Factual background.

For many years, the mother's adult life was in chaos.  She testified her
experiences—including relationships with different paramours, years of substance
abuse, and many attempts at treatment—all "run together," which made it difficult
for her to recall with much accuracy the specific events leading to her current
involvement with the Iowa Department of Human Services (DHS).  She admitted
to using drugs in 2016 while pregnant with an older child, who since died.  In
January 2018, K.P. was born, testing positive for marijuana in her system.
Voluntary services were offered to the mother.  In 2019, the mother successfully
graduated from inpatient treatment.  In February 2020, after concerns arose as to
mother's intravenous use of methamphetamine, an investigation led to a founded

child abuse report as to the mother.[2]  Services were again initiated.  In July, the mother again relapsed on intravenous methamphetamine, heroin, and opiates.[3]

On September 2, 2020, K.P. was adjudicated as a child in need of assistance.  The mother again entered treatment, progressing well and completing the program.  For several months, the mother was successful living in the community, working and caring for K.P.  But in March 2021, the mother relapsed with intravenous use of methamphetamine and heroin.  K.P. was removed and soon began living with her grandmother, where she has remained.  The mother again went to inpatient treatment, which was short-lived.  In April, the mother was in a car accident and arrested for operating while intoxicated.  She continued intravenous use of methamphetamine and heroin.  On June 10, the mother again entered inpatient treatment, but she left against staff advice four days later.  The most recent inpatient treatment began on September 2, after the mother admitted to being under the influence of methamphetamine, marijuana, and heroin, with heroin being her drug of choice.  This case came on for hearing for termination of parental rights on September 29 and October 27, 2021, after which the juvenile court terminated the mother's parental rights.

**B. Statutory grounds.**

The juvenile court found the statutory grounds for termination were met as to the mother under both Iowa Code section 232.116(1)(h) and (*l*) (2021).  She

---

[2] The record contains founded child abuse reports naming the mother as the perpetrator dated: February 7, 2018; February 26, 2020; August 11, 2020; and April 9, 2021.

[3] The mother tested positive for buprenorphine, clonazepam, fentanyl, hydromorphone, morphine, cocaine, marijuana, and methamphetamine.

appeals the statutory grounds only under the fourth element of paragraph (h). *See* Iowa Code § 232.116(1)(h)(4) (allowing the juvenile court to terminate parental rights if it finds "clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time"). She does not contest the findings for termination under paragraph (*l*), which allows the court to terminate parental rights if it finds all of the following:

> (1) The child has been adjudicated a child in need of assistance pursuant to section 232.96 and custody has been transferred from the child's parents for placement pursuant to section 232.102.
> (2) The parent has a severe substance-related disorder and presents a danger to self or others as evidence by prior acts.
> (3) There is clear and convincing evidence that the parent's prognosis indicated that the child will not be able to be returned to the custody of the parent within a reasonable period of time considering the child's age and need for a permanent home.

The juvenile court made explicit findings as to this code section, but because they are not challenged on appeal, they are waived. We therefore affirm the juvenile court's findings as they support the statutory findings under Iowa Code section 232.116(*l*). *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (stating we need not discuss the statutory grounds for termination when the parent does not dispute the existence of at least one ground); *Hyler v. Garner,* 548 N.W.2d 864, 870 (Iowa 1996) ("[O]ur review is confined to those propositions relied upon by the appellant for reversal on appeal.").

### C. Best interests of the child and parental bond.

We move to the mother's next claims, that termination is not in K.P.'s best interests and that the closeness of the parent-child bond should outweigh termination. *See* Iowa Code § 232.116(2), (3)(c); *P.L..*, 778 N.W.2d at 40–41.

Neither the juvenile court nor this court questions the close bond between the mother and K.P. Yet, as described above, the mother continues to struggle with substance abuse, quickly relapsing after brief sobriety despite multiple unsuccessful attempts at treatment. The juvenile court also found the "[m]other minimizes the depth of risk and harm she has placed the child in." The court concluded, "The mother cannot provide long term stability." The record fully supports these findings, and we agree termination is in K.P.'s best interests and the parent-child bond does not outweigh termination.

### D. Guardianship request.

The mother next faults the juvenile court for not granting a guardianship for K.P. with the maternal grandmother. *See* Iowa Code § 232.116(3)(a) (providing the court need not terminate if "[a] relative has legal custody of the child"). The mother readily acknowledged the strong bond K.P. and the grandmother share, noting that K.P. has spent "much of her young life with the grandmother" and the grandmother has provided a safe and stable home for her. However, the juvenile court made no ruling on whether a guardianship would be appropriate in this case. Therefore, we find the issue not preserved for our review. *See In re K.C.*, 660 N.W.2d 29, 38 (Iowa 2003) ("Even issues implicating constitutional rights must be presented to and ruled upon by the district court in order to preserve error for appeal."). Moreover, even if the issue were preserved for our review, "a guardianship is not a legally preferable alternative to termination." *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018) (*quoting In re B.T.*, 894 N.W.2d 29, 32 (Iowa Ct. App. 2017)).

**E. Reasonable efforts.**

In seeking to have the termination reversed, the mother also claims the State failed to provide her with reasonable reunification efforts. *See* Iowa Code § 232.102(7). While the mother states "the deficiency in services provided by DHS is identified in the material facts section of this petition," such claimed deficiencies are not found anywhere in the petition. This argument is therefore waived. *See In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000) ("A broad, all-encompassing argument is insufficient to identify error in cases of de novo review."). Furthermore, even if the mother had identified the allegedly deficient services on appeal, the mother did not challenge the services provided before the juvenile court in order to preserve the issue for appeal. *See In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002) ("In general, if a parent fails to request other services at the proper time, the parent waives the issue and may not later challenge it at the termination proceeding.").

**F. Additional time for reunification.**

Finally, the mother claims the juvenile court should have granted her an additional six months for reunification with K.P. *See* Iowa Code § 232.104(2)(b). She acknowledged she was not ready to care for K.P. at the time of the termination hearing. The juvenile court noted the mother "waited until the eve of termination in this case" before restarting treatment. The mother still has significant work to do to achieve lasting sobriety. The mother, who is now thirty years old, testified she has been using a variety of illegal substances since she was a teenager: marijuana since age fifteen or sixteen, opiates and benzos since age seventeen, cocaine since age seventeen or eighteen, methamphetamine since age eighteen, heroin since age nineteen, and intravenous substances since age nineteen. The

grandmother testified the mother had been at treatment facilities approximately twenty-seven times.  Since this case began, the mother had been in an inpatient treatment facility six times.  The juvenile court concluded, and we agree, "Additional time to work toward reunification would not be appropriate because mother has not been able to demonstrate any ability to remain stable and sober." K.P has been out of her mother's care much of her life, including almost nine months prior to the termination hearing.  K.P. deserves stability and need not wait longer for her mother to prove her ability to safely care for her daughter*.  See A.S.,* 906 N.W.2d at 474 ("Children simply cannot wait for responsible parenting." (quoting *In re C.K.*, 558 N.W.2d 170, 175 (Iowa 1997)); *In re A.C.,* 415 N.W.2d 609, 613–14 (Iowa 1987) ("The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems.").

We affirm the juvenile court's order, terminating the mother's parental rights.

**FATHER'S APPEAL DISMISSED; AFFIRMED ON MOTHER'S APPEAL.**